UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

EVERETT PASLEY,

            Plaintiff,                      Case No. 1:25-cv-925

v.                                             Honorable Ray Kent

MICHAEL BURGESS et al.,

           Defendants.
_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.10.)

      This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

      "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues Warden Michael Burgess, Deputy Warden Unknown O'Brien, Prison Counselor/Assistant Resident Unit Manager Unknown Verville, Resident Unit Manager Unknown Turner, and Corrections Officers Unknown Jones, Unknown

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Lowing, and Unknown Wert in their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that on October 16, 2024, Defendant Jones committed the felony crime of perjury. (*Id*., PageID.6.) Specifically, Defendant Jones stated that "at the time of this incident"—and Plaintiff never explains the nature of "this incident"—Plaintiff was not working as the 3-unit block representative, but was instead working as the 3 unit laundry porter. (*Id*.) Apparently Defendant Jones prepared "fraudulent/forged documents" to the same effect. (*Id*.) Plaintiff contends that Defendant Jones's statement and documents cause the wrongful termination of Plaintiff's job. (*Id*.)

On November 13, 2024, Defendant Verville stated that he had investigated the incident which led to the wrongful termination of Plaintiff's job assignment. (*Id*., PageID.7.) Defendant Verville falsely stated that Plaintiff had been working on his job detail as a laundry porter. Plaintiff states that he had actually been working on his block representative job.[2] (*Id*.) Plaintiff asserts that Defendant Verville was a co-worker of Defendant Jones and that they conspired to cover up the facts relating to the "incident" resulting in Plaintiff's job termination. (*Id*.)

Plaintiff contends that, on November 13, 2024, Defendant Turner lied when he stated that his investigation showed that Plaintiff had been working on his laundry porter job assignment, and not his 3-Unit block representative job. (*Id*., PageID.8.)

At some time subsequent to the above-described events, Plaintiff asserts that Defendants Lowing and Wert told Plaintiff that they had been instructed by supervisory officials not to reinstate Plaintiff in his job or to hire him for any other job. (*Id*.) Defendants Lowing and Wert

---

[2] Whatever the "incident" may have been, it is a fair inference that its occurrence while Plaintiff was performing his laundry porter job carried detrimental consequences that would not have followed if it had occurred while Plaintiff was performing his block representative duties.

4

were both co-workers of Defendant Jones. (*Id.*, PageID.9.) During April, May, and June of 2025, Defendants Lowing and Wert informed Plaintiff that he would never get rehired for any job and that there was nothing Plaintiff could do about it. (*Id.*)

Plaintiff must have filed a grievance regarding the loss of his job, because he alleges that on January 6, 2025, Defendant Burgess denied Plaintiff's step II grievance, as well as Plaintiff's request for a proper investigation into the wrongful termination of Plaintiff's job. (*Id.*, PageID.4.) Plaintiff states that Defendant Burgess refused to reveal the identity of staff who perjured themselves by falsely stating that Plaintiff had been working his job detail instead of on his block representative duties at the time of the "incident." (*Id.*) Plaintiff states that Defendant Burgess also failed to review 3-Unit camera footage, which would have proven that Plaintiff's job termination was wrongful. (*Id.*)

On June 30, 2025, Plaintiff approached Defendant O'Brien and explained the circumstances surrounding Plaintiff's job termination, as well as describing how Defendants were harassing Plaintiff and discriminating against him by refusing to review the video camera footage of the incident which would prove that Defendants had perjured themselves in order to have Plaintiff fired. (*Id.*) Plaintiff states that in addition, Defendants refused to reinstate him in his job or to hire him for any job. (*Id.*) Plaintiff states that Defendant O'Brien stated that he was not aware of the situation but would investigate and get back to Plaintiff. (*Id.*) Plaintiff states that he never heard back from Defendant O'Brien. (*Id.*)

On July 2, 2025, Plaintiff was told to pack up because he was being transferred pursuant to instructions from non-party Jason Erway, who is Defendant O'Brien's supervisor, and Defendant Verville. (*Id.*, PageID.5.) Plaintiff states that the transfer was retaliatory and that

5

Defendant Verville was involved in the decision, as well as in the decision to terminate Plaintiff from his job assignment. (*Id.*, PageID.6.)

Plaintiff seeks compensatory and punitive damages, as well as to have Defendants criminally prosecuted for perjury, conspiracy, and fraud. (*Id.*, PageID.10–12.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Request for Criminal Prosecution of Defendants

To the extent that Plaintiff seeks criminal prosecution of the named Defendants, the Court notes that such a request has no merit where the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Gonzalez v. Perez*, No. 98-6575, 2000 WL 222584, at *2 (6th Cir. Feb. 14, 2000) (citing *Mercer v. Lexington Fayette Urban County Gov't.,* No. 94-6645, 1995 WL 222178, at *1 (6th Cir. Apr. 13, 1995) (unpublished order)). A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004). Therefore, Plaintiff's request for injunctive relief is properly dismissed.

### B.    Official Capacity Claims

As noted above, Plaintiff brings claims against Defendants in both their individual and official capacities. Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the State of Michigan acting through the MDOC and its officials. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). But § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

7

However, the State of Michigan "is not a 'person' against whom a § 1983 for money damages might be asserted. *Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002). The "MDOC . . . is [not] a 'person' that may be sued for money damages under § 1983." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).  And, "officials acting in their official capacities are [not] person under § 1983." Will, 491 U.S. at 71. Accordingly, Plaintiff has failed to state a claim against the named Defendants in their official capacities.

### C.     Respondeat Superior

Plaintiff fails to allege that Defendants Burgess or O'Brien took any action against him, other than to suggest that they failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell* 436 U.S. at 698; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Burgess and O'Brien encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's job termination or subsequent transfer. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Burgess and O'Brien are premised on nothing more than respondeat superior liability, they fail to state a claim.

### D.   Individual Capacity Claims against Defendants Jones, Verville, Turner, Lowing, and Wert

Plaintiff claims that he was terminated from his job assignment in the prison without cause. Plaintiff states that on October 16, 2024, Defendant Jones falsely stated that Plaintiff had been working on his job assignment as laundry porter, when in fact Plaintiff had been working as the 3-Unit Block Representative. (ECF No. 1, PageID.6.) On November 13, 2024, Defendant Verville

9

lied and stated that his investigation of the incident corroborated the statement made by his co-worker Defendant Jones. (*Id.*, PageID.7.) Defendant Turner also signed the investigation report and corroborated the statements of co-workers Verville and Jones. (*Id.*, PageID.8.) Defendants Lowing and Wert repeatedly told Plaintiff that they had been instructed not to reinstate Plaintiff in his job or to allow Plaintiff to work a prison job at all. (*Id.*) Defendants Lowing and Wert refused to tell Plaintiff who had given them that instruction. (*Id.*) Plaintiff claims that Defendants Lowing and Wert are coworkers of Defendant Jones. (*Id.*, PageID.9.)

### 1.     Due Process

To the extent that Plaintiff is claiming that Defendants' conduct violated his right to due process, the Court notes that such a claim lacks merit.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Plaintiff does not have a liberty interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989) (no constitutional right to prison employment); *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir.1987) ("no prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker,* No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work

performed by inmates." *Carter,* 2003 WL 21518730, at *2 (citing *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991) and *James v. Quinlan,* 866 F.2d 627, 629-30 (3d Cir.1989)). Therefore, Plaintiff fails to state a due process claim arising from the termination of his prison job.

### 2. Retaliation

Plaintiff also asserts that his job termination and subsequent transfer to another facility were retaliatory. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff does not identify any protected conduct that preceded the loss of his prison job. Thus, although that loss may have been adverse action, there are no facts alleged that suggest that adverse action was motivated by the protected conduct.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no

11

concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

With regard to Plaintiff's transfer to another prison, he states that Defendant Verville was involved in the decision to transfer him and that it was retaliatory. However, Plaintiff fails to allege any facts showing that the decision was motivated by a desire to retaliate against him. He merely concludes that because he was contesting his job termination and had complained about Defendants' conduct months prior to the transfer, the transfer must have been motivated by his complaints. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill*, 630 F.3d at 476. Because Plaintiff does not allege any facts to support his conclusion that Defendants retaliated against him, his speculative assertions fail to state a claim.

### 3.      Equal Protection

Plaintiff also makes a conclusory assertion that Defendants discriminated against him. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims therefore are not subjected to strict scrutiny.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared

13

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

As noted above, Plaintiff's assertions regarding his job termination and subsequent treatment are conclusory and unsupported by specific factual allegations. Because Plaintiff fails to allege any facts showing that he was treated disparately as compared to a similarly situated person or persons, he fails to state a claim for the violation of his equal protection rights.

### 4.      Harassment claim

Plaintiff states that he was harassed and mentions the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey*, 832 F.2d at 954 (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The Court notes that Plaintiff fails to allege any specific facts regarding the nature of any harassment he may have suffered, much less that he was subjected to conditions which posed a

15

substantial risk of serious harm. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claim that he was harassed is entirely conclusory, it is properly dismissed.[3]

### 5. Sixth Amendment

Plaintiff states that Defendants violated his rights under the Sixth Amendment. The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U. S. Const. amend. VI.

Plaintiff merely mentions the Sixth Amendment in his complaint without any context (ECF No. 1, PageID.9). Because Plaintiff fails to allege any facts which implicate the Sixth Amendment, this claim is properly dismissed for failure to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

### 6. Conspiracy

Finally, Plaintiff asserts that Defendants conspired to violate his rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged

---

[3] Moreover, to the extent that Plaintiff is claiming verbal harassment, the Sixth Circuit has held that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits. *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004).

16

coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are similar to the rest of his claims in that they are conclusory and speculative. Plaintiff merely asserts that he was wrongfully terminated from his job without providing details, that his attempts to challenge his job termination were unsuccessful, and that at some point after he had complained about his termination he was transferred to another prison. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that Defendants worked together and knew each other. As the Supreme Court has held, allegations that hint at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Because Plaintiff's conclusory assertions are unsupported by any specific factual allegations, Plaintiff fails to state a plausible claim of conspiracy.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1). *See McGore*, 114 F.3d at 610-11.

A judgment consistent with this opinion will be entered.

Dated:   October 21, 2025                    /s/ Ray Kent
                                              Ray Kent
                                              United States Magistrate Judge